NO. 18-10238

# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

DEANNA J. ROBINSON,

*Plaintiff - Appellant*

v.

HUNT COUNTY, TEXAS; RANDY MEEKS, in his individual capacity
and official capacity; JOHN DOES 1-10, in their individual capacities
and their official capacities; JEFFERY HAINES, in his individual
capacity and official capacity; DESTINY TWEEDY, in her individual
capacity and official capacity; JACOB SMITH, in his individual capacity
and official capacity,

*Defendants – Appellees*

## BRIEF OF APPELLANT DEANNA J. ROBINSON

On Appeal from the United States District Court for the Northern
District of Texas, Dallas Division, Civil Action No. 3:17-CV-513-K

JT Morris
JT MORRIS LAW, PLLC
610 Brazos Street, Suite 320
Austin, TX 78701
Telephone: (512) 717-5275

Attorney for Plaintiff-Appellant Deanna J. Robinson

# CERTIFICATE OF INTERESTED PARTIES

Pursuant to Rule 28.2.1, the cause number and style of the case is: No. 18-10238, *Deanna J. Robinson v. Hunt County, Texas, et al.* (USDC Civil No. 3:17-CV-513-K, Northern District of Texas).

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

### Plaintiff-Appellant

Deanna J. Robinson

### Attorneys for Plaintiff-Appellant

JT Morris
JT MORRIS LAW, PLLC
610 Brazos Street, Suite 320
Austin, TX 78701
Telephone: (512) 717-5275

David D. Davis
LAW OFFICES OF DAVID D. DAVIS, PLLC
P.O. Box 542915
Grand Prairie, Texas 75204
Telephone: (972) 639-3440

### Defendants-Appellees

1. Hunt County, Texas;

2. Randy Meeks, Hunt County sheriff;

3. Jeffery Haines;

4. Destiny Tweedy;

ii

5. Jacob Smith;

6. John Does 1-5, each alleged to be an elected or appointed official, employee, servant, or agent of Hunt County, Texas.

## Attorneys for Defendants-Appellees

Thomas P. Brandt
Francisco J. Valenzuela
Laura O'Leary
Fanning, Harper, Martinson, Brandt, & Kutchin, P.C.
Two Energy Square
4849 Greenville Ave. Suite 1300
Dallas, Texas 75206
Telephone: (214) 369-1300


Respectfully Submitted,

/s/ JT Morris
JT Morris
Attorney for Plaintiff-Appellant

# STATEMENT REGARDING ORAL ARGUMENT

This appeal involves novel issues about government officials excluding a speaker from a social media page that is open to citizen participation and is administered under color of state law. These issues include (1) how the First Amendment applies to protect speakers on such a social media page, and (2) whether the social media platform's private speech policies justify state actors infringing the First Amendment rights of speakers on the page.

Accordingly, Plaintiff-Appellant Deanna J. Robinson respectfully requests oral argument. Robinson believes that oral argument will assist the Court in addressing the novel issues at hand, which to the best of Robinson's understanding, have not been presented to this Court before.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES...................................i

STATEMENT REGARDING ORAL ARGUMENT..........................iv

TABLE OF CONTENTS....................................................v

TABLE OF AUTHORITIES.........................................viii

JURISDICTIONAL STATEMENT.......................................1

STATEMENT OF ISSUES...............................................2

STATEMENT OF THE CASE............................................3

I. Robinson's allegations and the district court's order on Defendants' 12(b)(6) motion to dismiss..................................................3

  A.  The parties.......................................................4

  B.  The official HCSO Facebook page................................4

  C.  Defendants exclude Robinson and her political speech from the HCSO Facebook page..............................................5

  D.  Defendants' official policy of removing speech and banning speakers based on viewpoint. .....................................8

  E.  The district court dismisses Robinson's first amended complaint… ...................................................9

II. Robinson's motion for a preliminary injunction and the district court's denial of the same.....................................................10

  A.  The record on Robinson's motion. .............................10

  B.  The district court denies Robinson's motion by accepting in full the Magistrate Judge's findings, conclusions, and recommendation....................................................14

SUMMARY OF THE ARGUMENT.....................................15

ARGUMENT..............................................................19

I. The district court committed reversible error in granting Defendants' 12(b)(6) motion to dismiss.....................................19

  A.  Standard of Review .............................................19

B.   The district court erred in concluding that Robinson failed to show a First Amendment violation.....................................21

  i.   The district court arbitrarily limited Robinson's claims to one for First Amendment retaliation......................................21

  ii.  Robinson's allegations show the HCSO Facebook page is a public forum subject to First Amendment scrutiny..............22

  iii. The district court erred in finding Robinson did not sufficiently allege viewpoint discrimination.......................................24

  iv.  Robinson sufficiently alleged that her ongoing exclusion from the HCSO Facebook page is an unconstitutional prior restraint.......................................................................31

  v.   Robinson sufficiently alleged a First Amendment retaliation claim..........................................................................34

C.   The Court's dismissal of Robinson's other claims flow largely from its erroneous conclusion that she did not allege a First Amendment violation.............................................................35

  i.   The district court erred in dismissing Robinson's due process claim..........................................................................35

  ii.  The district court erred in dismissing Robinson's request for injunctive relief..........................................................36

  iii. The district court erred in dismissing Robinson's request for declaratory relief ........................................................36

D.   The Individual Defendants are proper parties to this case.......38

E.   The district court erred in concluding that Robinson did not sufficiently allege a municipal policy or custom as to Defendant Hunt County...............................................................41

  i.   Robinson sufficiently alleged a policymaker........................41

  ii.  Robinson sufficiently alleged the existence of an official policy or custom...................................................................42

  iii. Robinson sufficiently alleged the official policy was the moving force behind the deprivation of her constitutional rights......44

**II. The district court abused its discretion in denying Plaintiff's request for a preliminary injunction...............................................45**

A.    Standard of Review ....................................................46

B.    The district court erred in finding that Defendants were obligated to enforce Facebook's terms and conditions. ............47

C.    The district court erred as a matter of law in concluding that Facebook's terms and conditions supersede First Amendment protections for speech on the HCSO Facebook page. ................49

D.    The district court erred as a matter of law in failing to apply any First Amendment scrutiny to the HCSO Facebook page........566

E.    The district court legally erred in requiring Robinson to prove a "clearly established right" for injunctive relief. ........................59

PRAYER FOR RELIEF.................................................................60

CERTIFICATE OF SERVICE.....................................................62

CERTIFICATE OF COMPLIANCE............................................63

# TABLE OF AUTHORITIES

## Cases

*Alexander* v. *United States*, 509 U.S. 544 (1993) .................................... 32

*American Civil Liberties Union v. Mote*, 423 F.3d 438 (4th Cir. 2005) ..................................................................................................... .29, 53

*Ashcroft v. Free Speech Coalition*, 535 U.S. 235 (2002) ........................ 51

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963)................. 55,58

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................ 20

*Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675 (1986)...................... 30

*Board of Airport Comm'rs of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569 (1987) ....................................................................................... 52

*Byrum v. Landreth*, 566 F.3d 442 (5th Cir. 2009).........................46, 47

*Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285 (5th Cir. 2004) ................................................................................................................ 19

*Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330 (5th Cir. 2001) ......... 22, 25

*Chrissy F. v. Miss. Dep't of Pub. Welfare*, 925 F.2d 844 (5th Cir. 1991). ................................................................................................................ 59

*Colson v. Grohman*, 174 F.3d 498 (5th Cir. 1999) ................................. 21

*Concerned Women for Am. Educ. & Legal Def., Found., Inc. v. Lafayette Cty.*, 883 F.2d 32 (5th Cir. 1989)........................................................... 52

*Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*, 473 U.S. 788 (1985) ................................................................................... passim

*Davison v. Loudoun Cty. Bd. of Supervisors*, 267 F. Supp. 3d 702 (E.D. Va. 2017)...................................................................................... 40

*Elrod v. Burns*, 427 U.S. 347, 373 (1976)....................................... 46

*Ex parte Virginia*, 100 U.S. 339 (1880)................................................. 50

*Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992) ............ 58

*Gitlow v. New York*, 268 U.S. 652 (1925) .............................................. 50

*Griffin v. Maryland*, 378 U.S. 130 (1964) ............................................. 51

*Groden v. City of Dallas*, 826 F.3d 280 (5th Cir. 2016) .............. 33, 41, 42

*Hafer v. Melo*, 502 U.S. 21 (1991) .......................................................... 39

*Hamilton v. United Healthcare of Louisiana, Inc.*, 310 F.3d 385 (5th Cir. 2002) ................................................................................................... 19

*Hobbs v. Hawkins*, 968 F.2d 471 (5th Cir. 1992)..................................25h

*Hotel Emps. & Rest. Emps. Union, Local 100 v. City of N.Y. Dep't of Parks & Rec.*, 311 F.3d 534 (2d Cir. 2002)........................................ 29, 53

*Huminski v. Corsones*, 396 F.3d 53 (2d Cir. 2004)........................ passim

*Int'l Women's Day March Planning Comm. v. City of San Antonio*, 619 F.3d 346 (5th Cir. 2010) ................................................................. 25, 57

*Jackson v. Ladner*, No. 13-60631, 626 Fed. Appx. 80 (5th Cir. Sep. 15, 2015) ..................................................................................................54

*Johnson v. City of Shelby*, 135 S.Ct. 346 (2014) ................................21, 33

*Jones v. Heyman*, 888 F.2d 1328 (11th Cir. 1989) ................................. 23

*Keenan v. Tejeda,* 290 F.3d 252 (5th Cir. 2002) .................................... 34

*Kentucky v. Graham*, 473 U.S. 159 (1985) ............................................ 38

*Kinney v. Weaver*, 301 F.3d 253 (5th Cir. 2002) ................................... 25

*Kinney v. Weaver*, 367 F.3d 337 (5th Cir. 2004) ................................... 25

*L.A. Cty. v. Humphries*, 562 U.S. 29 (2010) ......................................... 38

*Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384 (1993) .............................................................................................. 24, 56

*La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981 (S.D. Tex. 2017)..53, 54

*Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374 (1995) ..................50

*Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242 (5th Cir. 1997) .. 20, 28

*Madison Joint School Dist. v. Wisconsin Employment Relations Comm'n*, 429 U.S. 167 (U.S. 1976).........................................................23

*Madsen v. Women's Health Ctr.,* 512 U.S. 753 (1994) ........................... 33

*McTernan v. City of York*, 564 F.3d 636 (3d Cir. 2009) ............. 32, 56, 58

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007)....................37

*Monroe v. Pape*, 365 U.S. 167 (1961) .................................................... 39

*Moore v. Kilgore,* 877 F.2d 364 (5th Cir. 1989) ....................................... 33

*Morgan v. Swanson*, 627 F.3d 170 (5th Cir. 2010) ................................. 27

*N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964) .............................. 15, 26

*Okpalobi v. Foster,* 244 F.3d 405 (5th Cir. 2001) .................................... 37

*Packingham v. North Carolina*, 137 S. Ct. 1730 (2017) ................. passim

*Parker v. Graves*, 479 F.2d 335 (5th Cir. 1973).................................... 40

*Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001) ................. 41

*Porter v. Ascension Par. Sch. Bd.*, 393 F.3d 608 (5th Cir. 2004). .......... 54

*Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237 (1952)........................ 37

*Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015).................................... 21

*Reed v. Wichita Cty.,* 795 F.3d 456 (5th Cir. 2015)............................... 40

*Reno v. ACLU*, 521 U.S. 844 (1997)....................................................... 24

*Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65 (1st Cir. 2004)............ 28

*Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819 (1995) ...................................................................................................... passim

*Sandvig v. Sessions*, Civ. No. 16-1368 (JDB), 2018 U.S. Dist. LEXIS 54339 (D.D.C. Mar. 30, 2018)................................................................ 52

*Schneider v. State*, 308 U.S. 147, 163 (1939)....................................... 34

*SCLC v. Supreme Court*, 252 F.3d 781 (5th Cir. 2001)......................... 20

*Serafine v. Branaman,* 810 F.3d 354 (5th Cir. 2016) ........................... 52

*Snipes v. Volusia Cty.*, 704 F. App'x 848 (11th Cir. 2017)................... 30

*Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546 (1975)...................................................................................................passim

*Surita v. Hyde*, 665 F.3d 860 (7th Cir. 2011) ....................................... 23

*Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535 (5th Cir. 2013)........................................................................................................ 46

*Texas v. Johnson*, 491 U.S. 397 (1989) .................................................. 28

*Thomas v. City of Galveston*, 800 F. Supp. 2d 826 (S.D. Tex. 2011)...... 43

*United States v. Stevens*, 559 U.S. 460 (2010) ...................................... 52

*Widmar v. Vincent*, 454 U.S. 263 (1981) ................................................25

## Statutes

28 U.S.C. § 1291 ...............................................................................1

28 U.S.C. § 1292 ...............................................................................1

28 U.S.C. § 1331 ...............................................................................1

28 U.S.C. § 1343 ...............................................................................1

28 U.S.C. § 2201 .............................................................................37

42 U.S.C. § 1983................................................................... passim

## Rules

FED. R. CIV. P. 12(b)(6)................................................................. 9, 19, 20

## JURISDICTIONAL STATEMENT

The district court had federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343. Plaintiff-Appellant Deanna J. Robinson appeals from (1) the district court's February 13, 2018 order denying Robinson's motion for a preliminary injunction, which accepted in full the United States Magistrate Judge's findings, conclusions, and recommendation on the motion over Robinson's objections (ROA.988-989), and (2) the district court's February 28, 2018 memorandum opinion and order and March 27, 2018 final judgment granting Defendants' motion to dismiss under FED. R. CIV. P. 12(b)(6) and dismissing Robinson's claims. ROA.995-1020, 1045-1046.

This Court has jurisdiction under 28 U.S.C. § 1292(a)(1) as to Robinson's appeal of the district court's order denying her motion for a preliminary injunction. Robinson filed a timely notice of appeal on February 28, 2018. ROA.992-994. This Court has jurisdiction under 28 U.S.C. § 1291 as to Robinson's appeal of the district court's order and final judgment dismissing her claims. Robinson filed timely amended notices of appeal as to the order and final judgment on March 6, 2018, and March 29, 2018, respectively. ROA.1021-1023, 1047-1049.

# STATEMENT OF ISSUES

1. Whether the district court erred in dismissing Robinson's First and Fourteenth Amendment claims, when Robinson alleged in detail how Defendants, under the color of state law, have prevented her from speaking on the official Hunt County Sheriff's Office Facebook page.

2. Whether the district court erred in dismissing Robinson's claims against Hunt County, when Robinson alleged specific examples of an official policy of viewpoint discrimination responsible for the ongoing deprivation of her First Amendment rights.

3. Whether the district court abused its discretion in denying Robinson's motion for a preliminary injunction, where it concluded that Facebook's private speech standards allowed Defendants to ignore their First Amendment obligations as state actors.

# STATEMENT OF THE CASE

The heart of Robinson's claims that the district court dismissed is certain. Robinson posted a comment on the official Hunt County Sheriff's Office Facebook page ("HCSO Facebook page") criticizing HCSO for asserting its policy to censor disagreeable speech that citizens posted on the page. ROA.447-448. In short time, Defendants without warning banned Robinson from the HCSO Facebook page and deleted her criticism. *Id.* Robinson, who has deep ties to Hunt County, remains banned from speaking on the page. ROA.441, 445-448.

## I. Robinson's allegations and the district court's order on Defendants' 12(b)(6) motion to dismiss.

Robinson filed her original complaint on February 23, 2017, seeking declaratory, injunctive, and monetary relief for deprivation of her First and Fourteenth Amendment rights under 42 U.S.C. § 1983. ROA.9-53. Robinson filed a First Amended Complaint ("FAC") on April 20, 2017. ROA.439-491. Robinson's factual allegations are summarized below.[1]

---

[1] Because this appeal involves both a 12(b)(6) motion to dismiss and a motion for preliminary injunction, Robinson is presenting separately (1) the factual allegations from her FAC and (2) facts from the preliminary injunction record relevant to her appeal of the district court's denial of her motion.

## A. The parties.

Robinson is a decorated Air Force veteran who was born and raised in Hunt County, Texas, and she resided there until recently. ROA.444. In 2015, she was subjected to a contentious and forceful arrest by the Hunt County, Texas sheriff's office ("HCSO"). *Id.* She was acquitted of all charges stemming from her arrest. *Id.* HCSO faced unfavorable media coverage and public commentary about Robinson's arrest. *Id.*

Defendant Hunt County is a governmental entity under the laws of Texas. ROA.441. Defendant Randy Meeks is the Hunt County sheriff, and is a duly elected official of and a final policymaker for Hunt County. *Id.* Defendants Jeffery Haines, Destiny Tweedy, and Jacob Smith are employed by Hunt County in positions with HCSO. ROA.441-442. Defendants John Does 1-5 are each an elected or appointed official of Hunt County, or an employee, servant or agent of Hunt County. ROA.442-443.[2]

## B. The official HCSO Facebook page.

Defendants created and administer the official HCSO Facebook

---

[2] Meeks, Haines, Smith, Tweedy, and Does 1-5 are herein referred to collectively as the "Individual Defendants."

page.[3] ROA.445. Defendants understood when creating the HCSO Facebook page that Facebook is highly compatible with expressive activity. ROA.446. Defendants consistently have encouraged and allowed citizens to engage directly with HCSO and other citizens by commenting on the page about topics of local public interest. ROA.445.

The HCSO Facebook page, at all times relevant, stated that the purpose of the HCSO Facebook Page "is to present matters of local pub[l]ic interest." ROA.445, 471. The page informed the public that HCSO may remove from the page certain comments, such as speech that is generally not protected under the First Amendment, purely commercial in nature, or specifically relating to elections. ROA.445-446, 471. Prior to January 18, 2017, the page made no mention of comments that are "insensitive" or not "family-friendly." *Id.*

## C. Defendants exclude Robinson and her political speech from the HCSO Facebook page.

On January 18, 2017, Defendants posted the following on the HCSO Facebook Page:

> We find it suspicious that the day after a North Texas Police Officer is murdered, we have received several anti

---

[3] The HCSO Facebook page can be accessed at https://www.facebook.com/Hunt-County-Sheriffs-Office-351968785012035/.

> police calls in the office as well as people trying to degrade or insult police officers on this page. ANY post filled with foul language, hate speech of all types and comments that are considered inappropriate will be removed and the user banned. There are a lot of families on this page and it is for everyone and therefore we monitor it extremely closely. Thank you for your understanding.

("January 18 Post"). ROA.447, 473. Many citizens, including Robinson, posted comments criticizing HCSO's assertion to censor speech on the page. ROA.447-449, 478-480, 482, 485-491. Robinson posted the following in response to the January 18 Post:

> Degrading or insulting police officers is not illegal, and in fact has been ruled time and time again, by multiple US courts, as protected First Amendment speech.
>
> Just because you consider a comment to be "inappropriate" doesn't give you the legal right to delete it and/or ban a private citizen from commenting on this TAX PAYER funded social media site.
>
> No police officer was "murdered" yesterday.
>
> Imagine how wonderful it would have been if the private citizen hadn't been confronted on private property and a stand off hadn't been created unnecessarily…..the terrorist pig with a shiny badge would still be alive today. Just imagine…..
>
> HCSO is a bunch of idiots, led by the biggest idiot in the entire country – if your moderators delete comments or ban people, you're just setting yourselves up perfectly for a First Amendment rights violation law suit. Thank you for your understanding.

ROA.447-448, 482. Soon after, Defendants deleted Robinson's publicly-

visible criticism and banned her from further speaking on the HCSO Facebook Page. ROA.448. She remains banned and her criticism of HCSO remains removed. *Id.* Defendants did not provide Robinson with notice or an opportunity to be heard before excluding her from speaking on the page. *Id.*

Defendants deleted Robinson's comment and banned her indefinitely from the HCSO Facebook page because of the viewpoint she expressed. ROA.447-450, 454-456, 461. Defendants also deleted several other comments criticizing Defendants' assertion to censor speech, or that otherwise were unfavorable to HCSO. ROA.447-449, 485-491. Neither Robinson's comment nor the other comments deleted were threatening, obscene, defamatory, commercial in nature, or unrelated to matters of local public concern. *Id.* Defendants did not delete comments that were favorable to HCSO, including favorable comments expressing "[k]ill one of our lawmen, we will kill you back!" and calling others "idiots" and "total boneheaded people." ROA.450, 473-474.

Defendants' indefinite ban of Robinson from the HCSO Facebook page is preventing Robinson from engaging HCSO and fellow citizens in a public forum important to her interests. ROA.447-450, 454-456, 461.

Defendants were motivated to block Robinson's access to the HCSO Facebook page as retaliation for her criticism of and dispute with HCSO. ROA.444, 448, 450. Finally, Defendants banned Robinson from the page and deleted her speech without notice and an opportunity to be heard. ROA.457-458.

### D. Defendants' official policy of removing speech and banning speakers based on viewpoint.

Defendants created, ratified, and maintained an official policy of screening and removing from the HCSO Facebook Page citizen comments unfavorable to Defendants. ROA.450-454, 459-462.

The HCSO Facebook page on its face expressed a policy of viewpoint discrimination. Defendants pressured citizens to post only "POSITIVE comments regarding the Hunt County Sheriff's Office," despite opening the page to public participation on matters of local public interest. ROA.453, 471. The January 18 Post was also illustrative of this policy, stating that "comments that are considered inappropriate will be removed and the user banned" without any accompanying objective criteria. ROA.451.

Defendants' censorship of Robinson and others in relation to the January 18 Post is just one example of Defendants enforcing this policy.

ROA.447-450. Defendants excluded speech and speakers they did not like from the HCSO Facebook page prior to January 18, 2017. ROA.452.

At least Meeks and/or one of the other Individual Defendants had final policymaking authority over the administration and maintenance of the HCSO Facebook page, either by operation of state law or by lawful delegation. ROA.453, 459. Meeks and/or one or more of the other Individual Defendants authorized, supervised, and approved the viewpoint-driven censorship of Robinson and others pursuant to the official policy. *Id.* Enforcement of the policy was the driving force behind Defendants deleting Robinson's criticism and banning her indefinitely from the HCSO Facebook page. ROA.452-454, 459-461.

### E. The district court dismisses Robinson's first amended complaint.

Defendants filed a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) on April 28, 2017. ROA.497-527. On February 28, 2018, the district court issued a memorandum opinion and order granting Defendants' motion to dismiss. ROA.995-1020. The district court concluded that: (1) Robinson did not sufficiently allege a First Amendment retaliation claim, which also required dismissal of her due process claim and requests for injunctive and declaratory relief; (2)

Robinson did not sufficiently allege a policy or custom required for a municipal liability claim under Section 1983 as to Hunt County; (3) the individual Defendants were entitled to qualified immunity as to Robinson's claim for damages; and (4) Robinson did not plead an adequate claim for supervisory liability.[4] *Id.* The district court entered final judgment in favor of Defendants on March 27, 2018. ROA.1045-1046.

## II. Robinson's motion for a preliminary injunction and the district court's denial of the same.

### A. The record on Robinson's motion.

On March 2, 2017, Robinson filed a motion for a preliminary injunction and a supporting brief and exhibits, requesting, *inter alia*, an order compelling Defendants to release their ban of Robinson from making comments and "liking" content on the page, and to restore her deleted comments. ROA.68-140. Robinson's evidence established that the HCSO Facebook page is a public forum.[5] ROA.105-106, 112, 129. It

---

[4] Robinson is not appealing the district court's finding of qualified immunity as to Robinson's claim for damages against Meeks, Haines, Tweedy, Smith, and John Does 1-5 or its dismissal of Robinson's supervisory liability claim.

[5] Robinson included evidence in a supplemental appendix submitted with her reply brief, which responded directly to factual issues first raised by Defendants' response to Plaintiff's motion. ROA.529-582. Defendants moved to strike this evidence (ROA.625-633), and the motion was referred to the United States Magistrate Judge

corroborated her allegations that Defendants excluded her and others' speech from the page based on the viewpoint expressed, including Defendants' call for only "POSITIVE" comments about HCSO. ROA.106-110, 112, 116, 118-125, 127, 131, 133, 135, 137, 139-140. And it established that she remained banned from the HCSO Facebook page at Defendants' hand. ROA.108, 547-548, 554-555, 557, 559-561.

In opposing Robinson's motion, Defendants' affidavits suggested that they excluded speech from the HCSO Facebook page because, in their opinion, it did not comply with Facebook's terms and conditions. ROA.223, 232-233, 236-237. But Defendants provided no evidence establishing that they were required to enforce Facebook's community standards through banning speakers and removing speech. The evidence did show that Facebook reserves the right to enforce its own community guidelines. ROA.320-341. Facebook's policies make clear "we may take action any time something violates the Community Standards outlined here." ROA.335.

---

(ROA.1038). The Magistrate Judge did not rule on Defendants' motion before issuing the FCR, which refers to portions of Robinson's reply that are supported by her supplemental appendix. *See* ROA.544-582, 739-740. Defendants' motion to strike was later determined to be moot. ROA.990-991.

Defendants' affidavits also claimed, contrary to the express scope of the HCSO Facebook page being "matters of local pub[l]ic concern" and HCSO's consistent practice of allowing citizen participation on the page, that they created the page only for purposes of public relations and to disseminate information to the community. ROA.222, 228, 233-234, 424. Yet Defendant Haines admitted that he discovered when setting up the HCSO Facebook page that Defendants could not proactively block citizens from posting comments to the page. ROA.232.

And evidence attached to Defendant Haines's affidavit showed that Facebook is highly compatible with open public discourse. Facebook's "Community Standards" state "[w]e permit open and critical discussion of people who are featured in the news or have a large public audience based on their profession or chosen activities." ROA.322. Facebook explains that "[p]eople use Facebook to share their experiences and to raise awareness about issues that are important to them. This means that you may encounter opinions that are different from yours, which we believe can lead to important conversations about difficult topics." ROA.334. Facebook's policies affirm that "not all disagreeable or disturbing content violates our Community Standards." ROA.335.

Defendants' affidavits also denied having seen or deleted any post by Robinson, and further claimed that HCSO had no record of Robinson following or commenting on the page. ROA.224-225, 228, 239-240, 426. But Defendants were at best willfully blind to Robinson's Facebook name "Deanna Jo." ROA.240, 417-418. Robinson established that she posted the deleted comment to the January 18 Post under that name. ROA.107-108, 127, 547-548.

Defendants made several other assertions opposing Robinson's motion, including: (1) that before Robinson filed her complaint, no one was banned from the HCSO Facebook page (ROA.237); (2) that comments critical of HCSO were visible on the page (ROA.236, 342-390); and (3) that the January 18 Post was motivated by not subjecting families and children to "profanity or posts that encourage violence against officers" (ROA.236). But Defendants' affidavits acknowledged they had deleted speech and banned citizens from the HCSO Facebook page. ROA.223, 232-233, 236-237. The evidence confirmed that they allowed favorable comments advocating violence and containing insults to remain on the January 18 comment thread. ROA.395-397. And all but one of the comment threads Defendants claimed showed a lack of viewpoint

discrimination were created well after January 18, 2017. ROA.342-390.

The evidence also undercut Defendants' suggestion that Facebook was responsible for Robinson's ongoing ban and the deletion of her criticism. Defendant Haines's affidavit indicated that HCSO staff had deleted comments from the HCSO Facebook Page on or after January 18. ROA.235-236. Robinson's inability to comment on or like posts on the HCSO Facebook page is consistent with Facebook's description of a user banned by a page administrator. ROA.557. Robinson established her comment was publicly visible before being deleted, indicating it did not trigger any Facebook "moderation algorithm." ROA.127, 548, 551.

### B. The district court denies Robinson's motion by accepting in full the Magistrate Judge's findings, conclusions, and recommendation.

Robinson's motion for a preliminary injunction was referred to the United States Magistrate Judge on May 18, 2017. ROA.1038. The Magistrate Judge issued findings, conclusions, and a recommendation to deny Robinson's motion ("FCR") on December 14, 2017. ROA.737-746. The Magistrate Judge concluded that Robinson could not show a likelihood of success on the merits for two reasons. First, the Magistrate Judge concluded that Defendants were required to follow Facebook's

terms and conditions, which justified Defendants excluding Robinson's speech from the HCSO Facebook page. ROA.740-743. Second, the Magistrate Judge concluded that Robinson failed to show a clearly established right, despite the only issue before the court being injunctive relief. ROA.743-745. Robinson timely filed several objections to the FCR and a supporting brief on December 28, 2017. ROA.747-769.

On February 13, 2018, the district court entered an order accepting the Magistrate Judge's recommendation and denying Robinson's motion over her objections. ROA.988-989. The district court's order did not include factual findings or legal conclusions as to the merits of Robinson's motion independent from those in the FCR. *Id.*

## SUMMARY OF THE ARGUMENT

The First Amendment protects "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). And the First Amendment ensures this "profound national commitment" extends to social media platforms like Facebook. As the Supreme Court of the

United States recently stressed, social media platforms offer "perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard," in part because these platforms encourage citizens to "petition their elected representatives and otherwise engage with them in a direct manner." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735, 1737 (2017).

It follows that the First Amendment does not tolerate government officials banning a speaker from a Facebook page that those officials opened to public participation, after the speaker sharply criticized the officials' stated policy of censoring speech on the page. This is the heart of Robinson's well-pled claims. The district court's erroneous rulings, if uncorrected, will signal to state actors that they can bend discourse in online public forums to their will. The First Amendment prohibits such an outcome.

Accordingly, this appeal challenges two erroneous rulings from the district court. First, the district court erred in granting Defendant's 12(b)(6) motion to dismiss Robinson's claims and in entering final judgment upon the same. *See* ROA.995-1020, 1045-1046. Had the district court followed its obligations to consider fully Robinson's allegations in

the most favorable light, it would have had no choice but to deny Defendants' 12(b)(6) motion.

But the district court erred in overlooking several detailed allegations at the core of Robinson's well-pled claims. For starters, the district court limited Robinson's claims to one for First Amendment retaliation. *See* ROA.1007-1010. But Robinson alleged in detail how Defendants <u>directly</u> restricted her speech because of the critical viewpoint she expressed, and because they imposed on her an impermissible prior restraint by banning her indefinitely from speaking on the HCSO Facebook page.  ROA.447-450, 454-456, 461.

 The district court further erred in emphasizing the "possibil[ity]" that Defendants excluded Robinson's speech because they deemed it "insensitive" or "inappropriate for other family followers." ROA.1010. Robinson's allegations directly contradict this "possibility." And the First Amendment protects polite and impolite speech alike, including here where Defendants broadly defined the scope of the HCSO Facebook page as "matters of local public interest."

The district court's opinion also did not account for several allegations regarding the existence of an official policy or custom as to

Hunt County. *See* ROA.450-454, 459-462, 1004-1007. For example, it overlooked Defendants' statement on the HCSO Facebook page pressuring citizens to make only "POSITIVE" comments about HCSO, in a forum that Defendants opened to public participation. ROA.1004-1007.

The district court erred in dismissing Robinson's claims as to injunctive and declaratory relief against both Hunt County and the Individual Defendants. This Court should reverse the district court's dismissal of Robinson's claims for injunctive and declaratory relief, vacate the district court's final judgment, and remand the case for further proceedings.

The district court also erred in denying Robinson's motion for a preliminary injunction, based on its wholesale acceptance of the Magistrate Judge's FCR. ROA.988-989. The district court erroneously found that Facebook's terms and conditions required Defendants to ban Robinson and to delete her comments, or risk "a potential ban from using Facebook." ROA.741-744. But the record contains no evidence to support this finding.

And as a matter of law, no private policy can supersede Defendants' First Amendment obligations as state actors. The district court's

conclusion, if upheld, would effectively privatize the First Amendment on social media and bestow state actors with the power to interpret and enforce broad and content-based private speech policies. The Constitution forbids such an outcome.

Robinson remains barred from engaging in future speech on the HCSO Facebook page, to her ongoing detriment. ROA.108, 547-548, 554-555, 557, 559-561. Accordingly, this Court should: (1) vacate the district court's order denying Robinson's motion because it was an abuse of discretion based on clear legal error; (2) reverse the district court's finding that Facebook imposed any obligation on Defendants to enforce Facebook's private speech standards; and (3) remand Robinson's motion for a preliminary injunction for proceedings consistent with the Court's findings and opinion.

## ARGUMENT

### I. The district court committed reversible error in granting Defendants' 12(b)(6) motion to dismiss.

#### A. Standard of Review

Dismissals under FED. R. CIV. P. 12(b)(6) are reviewed de novo. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing *Hamilton v. United Healthcare of Louisiana, Inc.*, 310 F.3d

385, 388 (5th Cir. 2002)). A motion to dismiss under FED. R. CIV. P. 12(b)(6) "is viewed with disfavor and is rarely granted." *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks, brackets, and citations omitted).

The ultimate question in evaluating a Rule 12(b)(6) motion is whether the complaint states a valid cause of action when it is examined in the light most favorable to the plaintiff and with every doubt resolved in the plaintiff's favor. *Lowrey,* 117 F.3d at 247. All reasonable inferences are to be drawn in the plaintiff's favor. *Id.* "In the context of a 12(b)(6) motion in a section 1983 suit, the focus should be 'whether the complaint properly sets forth a claim of a deprivation of rights, privileges, or immunities secured by the Constitution or laws of the United States caused by persons acting under color of state law.'" *SCLC v. Supreme*

*Court*, 252 F.3d 781, 786 (5th Cir. 2001) (internal citation omitted). [6]

### B. The district court erred in concluding that Robinson failed to show a First Amendment violation.

#### i. The district court limited Robinson's claims to one for First Amendment retaliation.

Robinson specifically alleged <u>direct limitations</u> on her protected speech based on (1) viewpoint discrimination and (2) an unconstitutional prior restraint. ROA.447-450, 454-456, 461, 473-474, 485-491. There is a clear distinction between direct limitations on speech and adverse state action against an individual because she exercised her right to free speech. *See Colson v. Grohman*, 174 F.3d 498, 508-09 (5th Cir. 1999) (contrasting the two distinct First Amendment violations). Indeed, when state action directly restricts speech, the state's motivation is immaterial, unlike in a claim for First Amendment relation. *See Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2229 (2015) (observing "the First Amendment expressly targets the operation of the laws—*i.e.,* the 'abridg[ement] of speech'—rather than merely the motives of those who enacted them.") The district court erred in limiting the scope of Robinson's allegations to

---

[6] The Supreme Court has rejected any heightened pleading standards for claims arising under Section 1983. *Johnson v. City of Shelby*, 135 S.Ct. 346, 347 (2014) (per curiam).

First Amendment retaliation. ROA.1007-1010.

### ii. Robinson's allegations show the HCSO Facebook page is a public forum subject to First Amendment scrutiny.

"[A] public forum may be created by government designation of a place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects." *Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985). When determining whether the government created a public forum, courts consider factors such as the government's intent with respect to the forum, and the nature of the forum and its compatibility with the speech at issue. *Id.* at 802-03; *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 346 (5th Cir. 2001) (citation omitted).

Robinson alleged that Defendants willingly created and operated the HCSO Facebook page "to present matters of local pub[l]ic interest." ROA.445. She further alleged how Defendants permitted and encouraged citizens to comment on the page on topics of local public interest. ROA.445-447. And she alleged that Defendants created the HCSO Facebook page and opened it to expression from citizens knowing fully

the compatibility between Facebook and open public discourse.[7] ROA.446.

Thus, the HCSO Facebook page as alleged is analogous to an interactive public meeting, which unquestionably is a public forum subject to First Amendment protection. *E.g., Madison Joint School Dist. v. Wisconsin Employment Relations Comm'n*, 429 U.S. 167, 174-175 (1976) (finding First Amendment protection applied to government facilities "opened [as] a forum for direct citizen involvement").[8] That the HCSO Facebook page is an online forum does not impact the First Amendment protection available to its participants. *See Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 830 (1995) (holding that the government may create a "metaphysical" public forum). As the

---

[7] While the HCSO Facebook page states "this is not a public forum" (ROA.471), the statement cannot save the page from First Amendment scrutiny. Six words do not overcome clear allegations of Defendants' practice in allowing citizen speech on local public concerns on the page and Defendants' understanding of Facebook's expressive and interactive platform. *See Cornelius*, 473 U.S. at 811 ("The existence of reasonable grounds for limiting access to a nonpublic forum . . . will not save a regulation that is in reality a facade for viewpoint-based discrimination") (citations omitted).

[8] *See also Surita v. Hyde*, 665 F.3d 860, 869 (7th Cir. 2011) (expressing "no doubt" that "audience time during . . . city council meetings constituted a designated public forum"); *Jones v. Heyman*, 888 F.2d 1328, 1331 (11th Cir. 1989) ("[T]he city commission designated their meeting a public forum when the commission intentionally opened it to the public and permitted public discourse on agenda items.")

Supreme Court recently confirmed, "[w]hile in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear. It is cyberspace—the 'vast democratic forums of the Internet' in general, and social media in particular." 137 S. Ct. at 1735 (quoting *Reno v. ACLU*, 521 U.S. 844, 870 (1997)). Robinson's allegations, when taken as true, show that the HCSO Facebook page was and remains a public forum subject to First Amendment scrutiny.[9]

### iii. The district court erred in finding Robinson did not sufficiently allege viewpoint discrimination.

Because the HCSO Facebook page was and remains a public forum, the First Amendment forbid Defendants from deleting speech and banning speakers from the page because of the viewpoint expressed. *Rosenberger*, 515 U.S. at 828 (affirming that "[d]iscrimination against speech because of its message is presumed to be unconstitutional.") This holds true even if the page was created for a limited purpose.[10] *Lamb's*

---

[9] The district court's memorandum opinion did not address whether the HCSO Facebook page is a public forum subject to First Amendment scrutiny. *See* ROA.1007-1010. Nonetheless, Robinson is addressing the forum issue here for the purpose of completeness and to further show the Court the sufficiency of her allegations.

[10] Robinson does not concede that the HCSO Facebook Page is a limited public forum; as she alleged, the HCSO Facebook page is either a designated public forum or a limited public forum ROA.446-447. It is sufficient at the pleading stage that

*Chapel v. Ctr. Moriches Union Free Sch. Dist.,* 508 U.S. 384, 392 (1993); *Int'l Women's Day March Planning Comm. v. City of San Antonio*, 619 F.3d 346, 359 (5th Cir. 2010) (recognizing that "content-based burdens on speech in a public forum are subject to strict scrutiny, while viewpoint-based burdens are unconstitutional.") Indeed, "[t]he Constitution forbids a State to enforce certain exclusions from a forum generally open to the public, even if it was not required to create the forum in the first place." *Widmar v. Vincent*, 454 U.S. 263, 267-268 (1981).

As she illustrates below, Robinson sufficiently alleged that Defendants excluded her protected political speech from the HCSO Facebook page because of the viewpoint she expressed.

### 1. Robinson's comment was core political speech protected under the First Amendment.

Robinson's comment on the HCSO Facebook page was protected political speech. It was a direct reply to Defendants' post stating they, as

---

Robinson's allegations, when taken as true, show the existence of a public forum subject to First Amendment scrutiny. As this Court has observed, "an action subject to forum analysis is not readily susceptible to summary dismissal." *Hobbs v. Hawkins*, 968 F.2d 471, 481 (5th Cir. 1992). "[T]his is particularly true where . . . the complaint alleges viewpoint discrimination, because viewpoint discrimination violates the First Amendment regardless of the forum's classification." *Id. See also Chiu*, 260 F.3d at 349-50 (finding no need to determine the specific forum status of a public school-related meeting where viewpoint discrimination was at issue).

state actors, intended to censor speech on the page. ROA.447-448. This Court has made clear "[p]rotection of speech critical of public officials' exercise of their powers is an integral part of the 'public debate' that the First Amendment protects." *Kinney v. Weaver,* 301 F.3d 253, 276 (5th Cir. 2002) (citations omitted), *rev'd. on other grounds*, 367 F.3d 337 (5th Cir. 2004) (en banc). Robinson has a great interest in engaging with HCSO and fellow citizens about HCSO's exercise of its powers, given her longstanding ties to Hunt County and her prior encounter with HCSO. ROA.444.

Robinson's criticism of HCSO was on a matter of local public interest, which is the stated scope of the HCSO Facebook page. ROA.445, 447-448. Robinson's speech was not threatening, nor an incitement to violence, nor defamatory, nor obscene. ROA.447-448. And that some may have deemed Robinson's criticism "inappropriate" or "insensitive" is of no consequence, given the First Amendment's strong protection for even the most caustic critiques of public officials. *Sullivan*, 376 U.S. at 270.

## 2. Robinson alleged facts are sufficient to show viewpoint discrimination.

Robinson alleged in detail how Defendants excluded her from speaking on the HCSO Facebook page because she criticized HCSO's

stated policy of censoring unfavorable viewpoints. ROA.447-450, 454-456, 461, 482. Robinson's allegations, when taken as true, demonstrate how Defendants excluded other citizens who similarly criticized or otherwise commented unfavorably on HCSO. ROA.447-449, 485-491. And importantly, Robinson alleges in detail how Defendants did not delete any comments or ban speakers having viewpoints favorable to HCSO, including those advocating violence and insulting others. ROA.450, 473-47.

This is more than sufficient at the pleading stage to establish a direct, viewpoint-based restriction of Robinson's right to speak in a public forum.[11] It was reversible error for the district court to conclude otherwise.

### 3. The district court made several errors concluding that Robinson did not sufficiently allege viewpoint discrimination.

The district court erroneously concluded that "[w]hile it may be possible that Defendants removed [Robinson's] comment because she

---

[11] *See Morgan v. Swanson*, 627 F.3d 170, 176 (5th Cir. 2010) ("This court is not tasked with determining whether Appellants actually engaged in religious-viewpoint discrimination because at this juncture, we must accept Appellees' factual allegations that Appellants discriminated against religious viewpoints."), *vacated on other grounds and reh'g granted*, 628 F.3d 705 (5th Cir. 2010) (en banc).

criticized the HCSO, it is also possible Defendants removed the comment because Defendants deemed it to be insensitive to the family of the recently deceased officer or inappropriate for other family followers." ROA.1010. The district court's emphasis on a mere "possibility" necessarily could not have accepted as true Robinson's allegations that Defendants restricted her speech on the basis of viewpoint. It also necessarily could not have resolved every doubt in Robinson's favor. *See Lowrey,* 117 F.3d at 247. Because Robinson alleged clear and specific facts showing viewpoint discrimination, a "close call" (as the district court's opinion seemed to paint it) should be resolved in her favor. This is especially true here, as Robinson's allegations of viewpoint discrimination concerned criticism of HCSO and its assertion to censor speech. *Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65, 86 (1st Cir. 2004) ("Suspicion that viewpoint discrimination is afoot is at its zenith when the speech restricted is speech critical of the government, because there is a strong risk that the government will act to censor ideas that oppose its own.") (citing *Texas v. Johnson*, 491 U.S. 397, 411-17 (1989)).

Moreover, Robinson's allegations contradicted any "possibility" that Defendants removed Robinson's comment because it was insensitive or

not family-friendly. She specifically alleged that Defendants' sudden "family friendly" justification was mere pretext for their true desire to exclude unfavorable speech, and that Defendants did not exclude favorable comments that were insulting or violent. ROA.450-451, 473-474. She also illustrated that Defendants pressured citizens into posting only "POSITIVE comments" about HCSO. ROA.781.

The district court's error was compounded given that the First Amendment prohibits Defendants from excluding speech on the basis that the speech was "inappropriate" or not "family-friendly." Neither criteria comports with viewpoint neutrality, as they both permit Defendants to exclude speech critical of HCSO. Moreover, a state actor cannot broadly define the scope of a public forum, and then on a whim restrict speech within that scope based on its content. *See Rosenberger*, 515 U.S. at 829 (concluding that once a government opens a forum, "[it] must respect the lawful boundaries it has itself set.")[12] But that is what Defendants did when first raising criteria of "inappropriate" and "family

---

[12] Indeed, strict scrutiny is appropriate even in a limited public forum where the state restricts speech that falls within the designated category for which the forum was opened. *See American Civil Liberties Union v. Mote*, 423 F.3d 438, 444 (4th Cir. 2005); *Hotel Emps. & Rest. Emps. Union, Local 100 v. City of N.Y. Dep't of Parks & Rec.*, 311 F.3d 534, 545 (2d Cir. 2002) (citations omitted).

friendly" comments on the January 18 Post, in a public forum they had broadly defined as relating to matters of local public interest. ROA.445-447, 471, 473. So, even if it was "possible" that Defendants excluded Robinson's speech because they deemed it to be "inappropriate" or not "family-friendly," the First Amendment prohibited Defendants from applying those restrictions to the HCSO Facebook page. The district court, then, should have weighed the "possibility" in strong favor of finding that Robinson sufficiently pled a First Amendment claim.

The district court's reliance on *Bethel Sch. Dist. No. 403 v. Fraser* and *Snipes v. Volusia Cty.* was also erroneous. Neither decision is applicable to First Amendment protection for public forums. *Fraser* concerns only the extent that the First Amendment protects non-political student speech that may disrupt a school's educational mission. 478 U.S. 675, 685 (1986). Likewise, *Snipes* concerns only First Amendment protection for public employee speech. 704 F. App'x 848, 851 (11th Cir. 2017). But here, the speech at issue was core political speech in a public forum, in which Robinson had a particularly strong interest.

And finally, while Robinson acknowledged in her allegations that at some point after January 18, 2017, Defendants appeared to have

restored some deleted comments (ROA.450), this single acknowledgment did not diminish Robinson's well-pled allegations of viewpoint discrimination.[13]  The chief question is whether Defendants engaged in viewpoint discrimination at the time they deleted Robinson's comment and banned her from future speaking on the HCSO Facebook page. Robinson's allegations establish this in clear detail. It was reversible error for the district court to conclude otherwise.

### iv. Robinson sufficiently alleged that her ongoing exclusion from the HCSO Facebook page is an unconstitutional prior restraint.

The district court erred in ignoring Robinson's allegations that her ongoing ban from speaking on the HCSO Facebook page is an unconstitutional prior restraint, independent of the question of viewpoint discrimination. Robinson specifically alleged that "the Defendants' continued act of banning of her from commenting on matters of public interest on the HCSO Facebook page, as alleged herein, is an impermissible prior restraint in violation of her right under the First and Fourteenth Amendments to the United States Constitution." ROA.454.

---

[13] Moreover, Robinson specifically alleged that any restoration of a handful of comments "underscores the reckless and callous indifference with which Defendants continue to treat the First Amendment rights of Plaintiff and others." ROA.450.

Her allegations provided significant details about her ongoing ban and Defendants' failure to provide any procedural safeguards before they imposed the ban. ROA.447-450, 454-456, 461.

Robinson's allegations sufficiently established an unconstitutional prior restraint that has deprived her of the right to engage in <u>any</u> future discourse with HCSO officials and fellow citizens in a public forum. *E.g., Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559-60 (1975) (finding officials' denial of access to a public forum to be an unconstitutional prior restraint where the state provided no "procedural safeguards designed to obviate the dangers of a censorship system.") Indeed, a state actor's indiscriminate ban of a particular citizen from speaking in a public forum is akin to an injunction on speech. *E.g., McTernan v. City of York*, 564 F.3d 636, 655-56 (3d Cir. 2009) (finding a police directive banning specific protesters from a public alley posed risks to protected speech similar to an injunction); *Huminski v. Corsones*, 396 F.3d 53, 92 (2d Cir. 2004) (concluding that a notice of trespass barring an individual from courthouse facilities is more analogous to an injunction than a general ordinance).[14] Admittedly, the Supreme Court has noted

---

[14] *See also Alexander* v. *United States*, 509 U.S. 544, 550 (1993) (observing that

that not all injunctions restricting expression are "prior restraints." *Madsen v. Women's Health Ctr.,* 512 U.S. 753, 763 n.2 (1994). But the label is not important at the pleadings stage, as Robinson's allegations show her ongoing ban is an unconstitutional bar on her ability to engage in any future discourse in a public forum. [15]

An absolute ban from future participation on the HCSO Facebook page is categorically unreasonable given the broad scope of the page.[16] *Huminski*, 396 F.3d at 92 (concluding a notice against trespass was an unreasonable restriction, as it singled out an individual for exclusion in expressive activity in and around a courthouse, where all others were permitted to engage in such expressive activity). This is particularly true

---

injunctions against speech are "classic examples of prior restraints."); *Moore v. Kilgore,* 877 F.2d 364, 383 (5th Cir. 1989) (observing generally that "an injunction which has the effect of gagging a speaker…. is also treated as a prior restraint because of its effect.").

[15] As this Court has observed, "the Supreme Court held that when a complaint contains sufficient factual allegations, a court should not grant a motion to dismiss 'for imperfect statement of the legal theory supporting the claim asserted.'" *Groden v. City of Dallas*, 826 F.3d 280, 282 (5th Cir. 2016) (quoting *City of Shelby*, 135 S.Ct. at 346).

[16] While *Huminski* relied on the "reasonable restriction in light of the forum's purpose" applicable to limited public forums, Robinson's ongoing ban also would not pass the heightened scrutiny applied to content-neutral injunctions in designated public forums. *See Madsen*, 512 U.S. at 767 (concluding that a content-neutral injunction in a traditional public forum "'burden[s] no more speech than necessary' to accomplish its objective.")

here, given the prevalence of social media as the public's preferred platform to engage their elected officials and fellow citizens on important matters. *Packingham,* 137 S. Ct. at 1737; *see also Schneider v. State*, 308 U.S. 147, 163 (1939) ("[O]ne is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place.")

Robinson's allegations, when taken as true, show that Defendants imposed an impermissible prior restraint, or at the very least, an impermissible injunction against her right to speak on the HCSO Facebook page. It was reversible error for the district court to overlook Robinson's well-pled claim of a prior restraint.

### v. Robinson sufficiently alleged a First Amendment retaliation claim.

A claim for First Amendment retaliation requires a showing that: (1) a plaintiff was engaged in constitutional protected activity; (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendants' adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct. *Keenan v. Tejeda,* 290 F.3d 252, 258 (5th Cir. 2002). As alleged,

Robinson's speech on the HCSO Facebook page was protected under the First Amendment. Robinson alleged that Defendants' actions would chill reasonable people from engaging in activity on the HCSO Facebook page out of fear of losing access to an important public forum. ROA.456. And she alleged how Defendants were motivated to exclude Robinson's speech because of her critical viewpoint. ROA.455-456. The district court erred in concluding Robinson did not sufficiently plead a retaliation claim.

When Robinson's allegations are viewed in the light most favorable to her, she sufficiently pled a First Amendment violation that meets Section 1983's requisite deprivation of a constitutional right under color of state law. She is entitled to proceed with her free speech claims, and the Court should reverse the district court's dismissal of her claims for declaratory and injunctive relief.

## C. The Court's dismissal of Robinson's other claims flow largely from its erroneous conclusion that she did not allege a First Amendment violation.

### i. The district court erred in dismissing Robinson's due process claim.

The district court dismissed Robinson's due process claim based on its conclusion that Robinson failed to sufficiently allege a First Amendment violation. ROA.1010-1011. But as established herein, that

conclusion was erroneous. Robinson also alleged that Defendants deprived her of her right to engage in political speech on the HCSO Facebook page without notice and without any opportunity to be heard. ROA.457-458. This Court should reverse the district court's dismissal of Robinson's due process claim.

### ii. The district court erred in dismissing Robinson's request for injunctive relief.

The district court dismissed Robinson's request for injunctive relief based on its conclusion that Robinson failed to sufficiently allege an underlying claim. ROA.1011-1012. But as established herein, that conclusion was erroneous. Moreover, Robinson has alleged in detail how she has and is continuing to suffer irreparable harm from being excluded from engaging in important public discourse on the HCSO Facebook page. ROA.456, 461-462. This Court should reverse the district court's dismissal of Robinson's request for injunctive relief.

### iii. The district court erred in dismissing Robinson's request for declaratory relief.

The district court dismissed Robinson's request for declaratory relief based on its conclusion that Robinson failed to sufficiently allege a First Amendment violation. ROA.1012-1013. But as established herein, that conclusion was erroneous. Robinson met her burden to allege an

underlying action supporting her claim for declaratory relief. *See Okpalobi v. Foster,* 244 F.3d 405, 424 n.31 (5th Cir. 2001).

The district court also suggested that Robinson's claims are "duplicative of the other claims in this lawsuit." ROA.1012-1013. But the district court offered no example of a duplicative claim or other reasoning behind its suggestion. *Id.* Moreover, the Declaratory Judgment Act makes clear a court "may declare the rights and other legal relations of any interested party seeking such declaration, *whether or not further relief is or could be sought.*" 28 U.S.C. § 2201 (emphasis added).

Robinson adequately pled the existence of a justiciable controversy between the parties, including her ongoing ban from speaking on the HCSO Facebook page, which continues to deprive her of constitutional rights.[17] ROA.457, 463, 466. A declaratory judgment will establish the relative rights of the parties as to the First Amendment protection Robinson's speech receives on the HCSO Facebook page and prevent further conflict going forward. It will also serve to thaw the chilling

---

[17] A federal declaratory judgment action requires an actual case or controversy. *Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 242 (1952); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) ("Our decisions have required that the dispute be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial'….").

effects of Defendants' acts and policies, and further citizen engagement with HCSO. This Court should reverse the district court's dismissal of Robinson's request for declaratory relief.

### D. The Individual Defendants are proper parties to this case.

Robinson sufficiently alleges facts, when taken as true, that establish Defendants Meeks, Haines, Smith, and Tweedy acted under color of state law in depriving Robinson of her constitutional right to engage in protected speech on the official HCSO Facebook page. ROA.441-450, 454-458. That is sufficient to survive their 12(b)(6) motion as to Robinson's requests for declaratory and injunctive relief.

As explained below, Robinson has effectively pled an official policy necessary to sustain her claims against Hunt County at the 12(b)(6) stage. And Robinson acknowledges that her claims against the Individual Defendants in their official capacity are duplicative of those against Hunt County.[18] But she should not be without redress for harm to her right to free speech if, for example, discovery reveals the lack of an official policy

---

[18] *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (holding that official capacity suits do not need to be brought against local government officials, because "local government units can be sued directly for damages and injunctive or declaratory relief."); *L.A. Cty. v. Humphries*, 562 U.S. 29, 30 (2010) (concluding that "claims for prospective relief . . . fall within the scope of the 'policy or custom' requirement" for municipal liability under Section 1983).

as the moving force behind obvious constitutional violations. *See generally Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("Through § 1983, Congress sought 'to give a remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position.'")(quoting *Monroe v. Pape*, 365 U.S. 167, 172 (1961)).

If a government official restricts a citizen's protected speech under the color of state law, then Section 1983 plainly entitles that citizen to obtain prospective relief against that official. 42 U.S.C. § 1983. Certainly, when an elected official and his subordinates use a social media page as the "official" online face for a government department, the creation and administration of that page is action taken under the color of state law. And that page, as illustrated herein, is subject to First Amendment scrutiny.

The importance of declaratory and injunctive relief against the Individual Defendants here is significant. Robinson has alleged fundamental First Amendment violations severely restricting her core political speech in a public forum that the Individual Defendants administer under the color of state law. Indeed, a district court recently granted declaratory relief against a government official in her individual

capacity, where the official acted under color of state law in operating her Facebook page and banning the plaintiff from the same. *Davison v. Loudoun Cty. Bd. of Supervisors*, 267 F. Supp. 3d 702, 715-16 (E.D. Va. 2017), *appeal filed,* No. 17-2002 (4th Cir. 2017). While not binding, *Davison* convincingly illustrates the importance of declaratory relief against government officials in their individual capacities where they act under color of state law to censor citizen speech on social media.

Robinson pled individual capacity claims against the Individual Defendants sufficient to put each on notice of Robinson's request for declaratory and injunctive relief as to their conduct. ROA.441-450, 454-458. While Robinson did allege that the Individual Defendants were "being sued in [their] individual capacity as to monetary damages, and in [their] official capacity as to injunctive and declaratory relief" (ROA.442-443), one imprecision in her pleading should not foreclose her from pursuing appropriate relief that her allegations support.[19]

---

[19] *See Parker v. Graves*, 479 F.2d 335, 336 (5th Cir. 1973) (per curiam) ("A person's capacity need not be pled except to the extent required to show the jurisdiction of the court. . . The allegations in the complaint must be examined in order to determine the nature of the plaintiff's cause of action.") (internal citations omitted). Moreover, "there is no rule barring a plaintiff from pleading [ ] alternative theories, and a court may properly evaluate each separately" in the context of a § 1983 action. *Reed v. Wichita Cty. (Estate of Henson)*, 795 F.3d 456, 464 (5th Cir. 2015).

Especially here, where she made clear her allegations were against the Individual Defendants in both capacities. ROA.439. Accordingly, Robinson is entitled to proceed with her claims against the Individual Defendants as to her requests for declaratory and injunctive relief.

### E. The district court erred in concluding that Robinson did not sufficiently allege a municipal policy or custom as to Defendant Hunt County.

To establish municipal liability under Section 1983, a plaintiff must show: "1) a policymaker; 2) an official policy; and 3) a violation of constitutional rights whose moving force is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Robinson's detailed allegations met each of these elements, and it was error for the district court to dismiss her claims against Hunt County.

### i. Robinson sufficiently alleged a policymaker

Robinson specifically alleged that Defendant Meeks (or one or more of the other Individual Defendants) had final policymaking authority regarding the HCSO Facebook page, either by operation of law or through lawful delegation. ROA.453, 459. And she specifically alleged how the final policymaker(s) ratified and approved a policy and/or standard procedure of viewpoint discrimination on the page. *Id.* That is sufficient to survive a 12(b)(6) motion on a municipal liability claim. *Groden,* 826

F.3d at 282 (concluding "for purposes of Rule 12(b)(6), we hold that a plaintiff is not required to single out the specific policymaker in his complaint; instead, a plaintiff need only plead facts that show that the defendant or defendants acted pursuant to a specific official policy, which was promulgated or ratified by the legally authorized policymaker.")

### ii. Robinson sufficiently alleged the existence of an official policy or custom.

The HCSO Facebook page instructed citizens that "[w]e welcome your input and POSITIVE comments regarding the Hunt County Sheriff's Office." ROA.453, 471. And the January 18 Post warned that "comments that are considered inappropriate will be removed and the user banned" without any accompanying objective criteria. ROA.447. Both are barefaced expressions of an official policy of viewpoint discrimination for the HCSO Facebook page. ROA.450-451, 453. These allegations were more than sufficient to survive Defendants' 12(b)(6) motion.

But Robinson went even further. She specifically alleged Defendants' prior history of deleting comments and banning speakers critical of Meeks. ROA.452. She fully detailed the existence of an official policy or custom that moved Defendants to remove comments and ban

speakers from the HCSO Facebook page that criticized or otherwise spoke unfavorably of HCSO. ROA.447-452, 473-491. And she alleged that Defendants' January 18 Post was a pretext to further an official policy of viewpoint discrimination. ROA.451.

But the district court did not address any of these detailed allegations. ROA.1004-1007. Its opinion elected to focus only on: (1) Robinson's allegation that some deleted comments were restored; (2) that some critical comments were visible on the Facebook page; and (3) Robinson's allegation that Defendants uniquely targeted her given her prior criticism of and encounter with HCSO. *Id.* That some critical comments were restored (or remained visible) cannot negate Robinson's well-pled allegations of an official policy. Had the district court taken all of Robinson's well-pled allegations as true and resolved reasonable inferences in her favor, it would have been compelled to find that Robinson sufficiently alleged an official policy of viewpoint discrimination. [20]

---

[20] As one district court in this Circuit has persuasively observed, "[i]n the context of municipal liability, as opposed to individual officer liability, it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery. Accordingly, only minimal factual allegations should be required at the motion to dismiss stage" for pleading municipal liability. *Thomas v. City of Galveston*,

Robinson is unaware of any rule requiring a plaintiff to demonstrate perfect adherence to an official municipal policy to survive a Rule 12(b)(6) motion on a § 1983 claim. And regardless, her allegations when taken as true establish that the official policy was in effect on and shortly thereafter January 18, 2017, and that it was the driving force behind Defendants' exclusion of her speech. ROA.450-454. Indeed, as Robinson alleged, the January 18 Post was illustrative of an official policy of censoring speech critical of or otherwise unfavorable to HCSO. ROA.447, 450-451. And Robinson's allegation that Defendants uniquely targeted her should reasonably be inferred as relating to her claim of retaliation and punitive damages, not to her allegations of an official policy. *See* ROA.448, 459-463. It is clear Robinson alleged an official policy of viewpoint discrimination sufficient to sustain her claims against Hunt County.

### iii. Robinson sufficiently alleged the official policy was the moving force behind the deprivation of her constitutional rights.

Finally, Robinson's allegations detail how Hunt County's official policy was the "moving force" behind the deprivation of her First

---

800 F. Supp. 2d 826, 842-43 (S.D. Tex. 2011).

Amendment rights. ROA.452-454, 459-461. As one example, she specifically alleged "Defendants' official policy and/or longstanding custom was designed and executed to shape public discourse on the HCSO Facebook page to encourage and reflect only those viewpoints that are popular with, complimentary of, or otherwise favorable to Defendants." ROA.452. And as established above, she alleged in detail how the official policy caused Defendants to delete her criticism and ban her without end  from public participation on the HCSO Facebook page.

This Court should reverse the district court's dismissal of Robinson's claims for injunctive and declaratory relief against Hunt County.

## II. The district court abused its discretion in denying Plaintiff's request for a preliminary injunction.

The district court's denial of Robinson's motion for a preliminary injunction was an abuse of discretion grounded in clear legal error. As the Supreme Court recently advised, courts "must exercise extreme caution before suggesting that the First Amendment provides scant protection for access" to social networks. *Packingham*, 137 S. Ct. at 1732. The district court reasoned that Robinson could not show a likelihood of success on the merits, because Facebook's private content policies

justified Defendants, as state actors, excluding Robinson's speech critical of HCSO in a public forum open to comment on matters of local public interest. ROA.740-743. But the district court did not address the certain First Amendment implications of Defendants' treatment of Robinson's protected speech. *Id.*

The district court's analysis was erroneous as a matter of law in light of longstanding constitutional principles, and further, it lacked any evidentiary support. The Court should vacate the district court's order denying Robinson's motion[21] and remand it for further proceedings consistent with a correct application of the law and underlying facts.

## A. Standard of Review

"Although the ultimate decision whether to grant or deny a preliminary injunction is reviewed only for abuse of discretion, a decision

---

[21] In determining whether a preliminary injunction is warranted, the Court considers four factors: likelihood of success, irreparable harm, public interest, and balance of hardships. *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009). The district court only considered likelihood of success. But the remaining factors weigh strongly in Robinson's favor. Defendants' ban on Robinson's speech is considered "unquestionabl[e]" irreparable injury even if it only lasts for "minimal periods." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013) (citing *Elrod*). The burden on the state in restoring Robinson's speech is minimal. And the public interest is always served by protecting the First Amendment. *Texans for Free Enter.*, 732 F.3d at 539 (citation omitted). Robinson's continuing ban makes this case suitable for preliminary injunction.

grounded in erroneous legal principles is reviewed *de novo.*" *Byrum v. Landreth*, 566 F.3d at 445. "[W]hen a preliminary injunction turns on a mixed question of law and fact, it, too, is reviewed *de novo.*" *Id.* (citation omitted).

### B. The district court erred in finding that Defendants were obligated to enforce Facebook's terms and conditions.

In adopting the FCR entirely, the district court found that Defendants were obligated to enforce Facebook's private community standards, and that they would risk "a potential ban from using Facebook" if they failed to silence Robinson. ROA.740-743. But nothing in the record suggested that Facebook requires page administrators to enforce Facebook community standards by deleting speech and banning speakers. Rather, the evidence showed that Facebook enforces its own community standards, and accordingly, had no policy that would punish an administrator for failing to remove third-party speech or speakers from a page. *See, e.g.*, ROA.320-341. Facebook makes clear "[w]e may take action any time something violates the Community Standards outlined here." ROA.335 (emphasis added). Defendant Tweedy's affidavit confirms "it is my understanding that posts and comments that violate [Facebook] terms and community standards may be removed by

Facebook." ROA.222.

Facebook also makes clear that users can report violations of community standards to Facebook, and Facebook decides what content violates its standards and what does not. ROA.320-341. Facebook may also filter some content automatically. *Id.* This makes sense intuitively. First, it would be unfair to punish page administrators for commentary of third parties. And second, punishing administrators for third-party content on their page would be counterproductive, as it would encourage bad actors to spam pages with objectionable commentary.

Meaningfully, Facebook emphasizes that its platform is one intended to encourage public discourse, further illustrating the error of the district court's finding. And Facebook tells users "[w]e permit open and critical discussion of people who are featured in the news or have a large public audience based on their profession or chosen activities." ROA.322. Facebook takes care to note that "not all disagreeable or disturbing content violates our Community Standards." ROA.335. And Facebook encourages users to "resolve issues they have about a piece of content by simply reaching out to the person who posted it." *Id.*

It was also erroneous, then, for the district court to find that

Robinson's comment "likely" was not in compliance with Facebook's community standards. *See* ROA.320-325. At worst, Robinson's comments were "insensitive" or "disagreeable." And there is no evidence that Facebook removed Robinson's comment or warned either Robinson or HCSO about the content of Robinson's comment. There is no evidence that Robinson's comment was blocked or flagged by any filter. And there is no evidence that Defendants or anyone else at HCSO reported Robinson's comment to Facebook.

The district court abused its discretion in finding, without any supporting evidence, that Robinson was unable to show a likelihood of success on the merits because Defendants were required to enforce Facebook's private policies. ROA.743.[22]

### C. The district court erred as a matter of law in concluding that Facebook's terms and conditions supersede First Amendment protections for speech on the HCSO Facebook page.

The district court concluded that:

> Because removal of Plaintiff's post would most likely be

---

[22] The Magistrate Judge's statement that enforcing Facebook speech rules on others is necessary "in order for Defendants to utilize Facebook" cites to an unremarkable portion of Facebook's Terms of Service on "Reporting Abuse," which states that persons <u>who are reported to Facebook</u> may be banned <u>by Facebook</u> for further violations of community standards, based on their own behavior. ROA.741 (emphasis added).

> construed as compliance with Facebook's policies, which
> must be followed in order for Defendants to utilize
> Facebook, and because Facebook has the right to control
> the contents of its platform, Plaintiff has not
> demonstrated a substantial likelihood of prevailing on
> the merits.

ROA.743. The district court erred as a matter of law in making this conclusion. Facebook's "right to control the contents of its platform" as a private actor is immaterial to the First Amendment scrutiny the district court should have applied to the government-administered HCSO Facebook page.

"The Constitution constrains governmental action 'by whatever instruments or in whatever modes that action may be taken.'" *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 392 (1995) (quoting *Ex parte Virginia*, 100 U.S. 339, 346-47 (1880)). The First Amendment's guarantee of freedom of speech has protected against state and local officials suppressing speech for over ninety years. *Gitlow v. New York*, 268 U.S. 652, 666 (1925). As such, there is a clear line between how Facebook can treat speech on its platform as a private actor, and how Defendants must treat speech on their official government Facebook page operated under the color of law. *See generally Southeastern Promotions, Ltd.*, 420 U.S.

at 560-61 (finding a privately-owned theater leased to a municipal government to be a public forum subject to First Amendment protection).

The Supreme Court has rejected the argument that a state actor may enforce a private actor's desires when it would require unconstitutional action. *Griffin v. Maryland*, 378 U.S. 130, 135 (1964). And a state actor cannot suppress speech in the name of preventing unlawful speech. *See Ashcroft v. Free Speech Coalition*, 535 U.S. 235, 255 (2002) ("[the government] may not suppress lawful speech as the means to suppress unlawful speech.") Certainly, then, a state actor cannot ban future speech under the guise that it may disobey of the policies of a private company.

But the district court's conclusions drew no distinction between Facebook's private power to enforce broad, content-based speech standards, and HCSO's obligation to abide by First Amendment principles. *See* ROA.740-743. Instead, the district court erroneously concluded that Defendants' exclusion of Robinson's speech was justified because their "policies" allegedly "mirrored" Facebook's own standards. *See* ROA.743. If Facebook had a policy that discriminated on the basis of race, gender, or religion, Defendants could not "mirror" and enforce such

a policy for the HCSO Facebook page. And even if a private policy is not discriminatory on its face, the First Amendment prohibits a government from interpreting and enforcing a policy selectively. *See United States v. Stevens*, 559 U.S. 460, 480 (2010) ("But the First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige*. We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly."); *Serafine v. Branaman*, 810 F.3d 354, 368-369 (5th Cir. 2016) (citing *Board of Airport Comm'rs of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 574 (1987) and *Stevens*, 559 U.S. at 480). [23]

Moreover, Facebook's private speech policies are unquestionably content-based. ROA.940-948; 943-955. If the HCSO Facebook page ultimately is determined to be a designated public forum, Defendants could not have enforced Facebook's private speech policies because they are content-based. *Concerned Women for Am. Educ. & Legal Def., Found., Inc. v. Lafayette Cty.*, 883 F.2d 32, 34-35 (5th Cir. 1989) (citing

---

[23] *See also Sandvig v. Sessions*, Civ. No. 16-1368 (JDB), 2018 U.S. Dist. LEXIS 54339, *45-46 (D.D.C. Mar. 30, 2018) ("By incorporating [private] ToS that purport to prohibit the purposes for which one accesses a website or the uses to which one can put information obtained there, the CFAA threatens to burden a great deal of expressive activity, even on publicly accessible websites—which brings the First Amendment into play.").

*Cornelius*, 473 U.S. at 803). If the page ultimately is determined to be a limited public forum, Facebook's broad content-based restrictions would not be reasonable in light of the purpose for which Defendants opened the HCSO Facebook page—matters of local public interest. *Cornelius*, 473 U.S. at 803.[24] And certainly, Defendants banning a speaker indefinitely under the excuse of enforcing Facebook's private policies is not constitutionally-permissible under any measure. *See, e.g., Huminski*, 396 F.3d at 92.

Even Facebook makes clear that a page owner is "responsible for ensuring that [its] Page complies with all applicable laws, statutes, and regulations." ROA.337. Defendants may try to hide behind Facebook's private policies in justifying their silencing of Robinson. But they cannot do so given that Facebook's policies require Defendants as state actors to ensure the HCSO Facebook page complies with their First Amendment obligations.

The district court also erred in relying on *La'Tiejira v. Facebook*,

---

[24]And as discussed earlier, strict scrutiny would be appropriate in a limited public forum where the state restricts speech that falls within the designated category for which the forum was opened. *See Mote*, 423 F.3d at 444; *Hotel Emps. & Rest. Emps. Union*. 311 F.3d at 545.

*Inc.*, 272 F. Supp. 3d 981 (S.D. Tex. 2017). ROA.741-742. *La'Tiejira* relates only to Facebook's First Amendment right as a private publisher to control the content on its platform. *Id.* at 991-992. Nothing in *La'Tiejira* suggested a state actor may escape First Amendment scrutiny under the excuse of enforcing Facebook's private terms and conditions. The district court's reliance on *Jackson v. Ladner*, No. 13-60631, 626 Fed. Appx. 80 (5th Cir. Sep. 15, 2015) was similarly erroneous. ROA.743-744. In *Jackson*, a high school student was punished for sending threatening Facebook messages to another student. *Id.* at 82-3. That child would have been penalized if such threats were made in a public park, as true threats are categorically unprotected speech. *E.g., Porter v. Ascension Par. Sch. Bd.*, 393 F.3d 608, 616 (5th Cir. 2004). The same does not hold for Robinson's non-threatening criticism of HCSO.

And finally, the district court incorrectly surmised that *Packingham* is "distinguishable in that Plaintiff here is not completely banned from Facebook but is restricted in posting content that complies with Facebook policies." ROA.744. As established, the First Amendment does not permit a state actor to suppress speech under the guise of enforcing a private policy. And the district court again overlooked that

Robinson is categorically banned from speaking in a public forum important to her. As *Packingham* reminded us, "[a] fundamental principle of the First Amendment is that all persons have access to places where they can speak and listen, and then, after reflection, speak and listen once more," including the online public forums increasingly vital to our democratic process. 137 S. Ct. at 1735, 1737. If the Supreme Court in *Packingham* determined the State of North Carolina could not meet its heavy burden to categorically exclude a sex offender from using social media, Defendants certainly had no justification to exclude Robinson from engaging in any future public discourse on the HCSO Facebook page. *See id.* at 1737-38.

In sum, Defendants' administration of the HCSO Facebook page is constrained by core First Amendment principles such as viewpoint neutrality[25] and a heavy presumption as to the unconstitutionality of prior restraints.[26] It was legal error for the district court to elevate Facebook's terms and conditions above First Amendment guarantees.

---

[25] *Cornelius*, 473 U.S. at 811; *Rosenberger*, 515 U.S. at 829.

[26] *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). *See also Southeastern Promotions, Ltd.,* 420 U.S. at 560-561.

### D. The district court erred as a matter of law in failing to apply any First Amendment scrutiny to the HCSO Facebook page.

The district court erred as a matter of law in not applying any First Amendment scrutiny to Defendants' exclusion of Robinson from speaking on the HCSO Facebook page. The record illustrated that the HCSO Facebook page is a public forum akin to an interactive public meeting.[27] ROA.105-106, 112, 129. Thus, it is subject the First Amendment's demand for viewpoint neutrality. *Lamb's Chapel*, 508 U.S. at 392; *Rosenberger,* 515 U.S. at 829-830. The record also showed that Robinson remained banned from the HCSO Facebook page. ROA.108, 547-548, 554-555, 557, 559-561. Any ban preventing a citizen from speaking in a public forum should instantly raise questions as to an impermissible prior restraint (or an equivalent thereto).[28]

But the district court touched upon none of these First Amendment questions. Even assuming *arguendo* that Facebook's terms and conditions had any relevance to Robinson's ability to show a likelihood of

---

[27] As Robinson established, when the government opens an interactive public meeting, it creates a public forum subject to First Amendment protections. *Supra* Section I.B.ii.

[28] *Southeastern Promotions, Ltd.,* 420 U.S.at 560-561; *McTernan*, 564 F.3d at 655-56 (3d Cir. 2009); *Huminski,* 396 F.3d at 92.

success, the district court should have first reached the issues of forum analysis, viewpoint neutrality, and prior restraint. Indeed, there was no need for the district court to examine any possible justification Defendants may have had for silencing Robinson before it examined whether Defendants engaged in viewpoint discrimination. *Cornelius*, 473 U.S. at 806 (holding that viewpoint neutrality is required even in non-public forums); *Int'l Women's Day March Planning Comm.*, 619 F.3d at 359 ("content-based burdens on speech in a public forum are subject to strict scrutiny, while viewpoint-based burdens are unconstitutional.")

Defendants' own statements on the HCSO Facebook page show they did not treat comments on its Facebook page even-handedly. The page coaxed citizens to make only "POSITIVE comments regarding the Hunt County Sheriff's Office" (ROA.781), and warned that "inappropriate" comments "will be removed and the user banned." (ROA.785). Defendants' subjective interpretation of what they consider to be a "POSITIVE" or "appropriate" comment by its very nature is incompatible with the demands of viewpoint neutrality, particularly given that the HCSO Facebook page is open to citizen comment on matters of public interest. And as the record shows, Defendants did not

treat Robinson's speech in a viewpoint-neutral manner. ROA.106-110, 112, 116, 118-125, 127, 131, 133, 135, 137, 139-140. The district court was obligated to reach the issue of viewpoint discrimination.

The district court also did not address the serious burden on Robinson's speech resulting from her ongoing ban from the HCSO Facebook page. ROA.741-745. There was no need for the district court to examine any possible justification Defendants may have had for silencing Robinson before it reached this issue. An outright ban from a public forum is a prior restraint, or at the very least equivalent to an injunction with comparable suppressive harms to speech. *Southeastern Promotions, Ltd.,* 420 U.S. at 560-561; *McTernan*, 564 F.3d at 655-56; *Huminski,* 396 F.3d at 92. There is a "heavy presumption" that such prior restraints on speech are unconstitutional. *Bantam Books, Inc.*, 372 U.S. at 70.

Moreover, there is no evidence Defendants provided a review process, objective factors, or other safeguards to prevent a page administrator from punishing Robinson and others for exercising their First Amendment right to criticize HCSO. Vague government speech policies lacking such safeguards are not allowed for good reason. *See Forsyth County v. Nationalist Movement*, 505 U.S. 123, 133 (1992)

(observing that "[t]he First Amendment prohibits the vesting of [ ] unbridled discretion in a government official.") And here, Robinson was banned indefinitely, a most serious affront to her First Amendment right to criticize HCSO directly in a public forum. The district court erred as a matter of law in not addressing the prior restraint implications of Robinson's ongoing ban. ROA.740-745.

### E. The district court legally erred in requiring Robinson to prove a "clearly established right" for injunctive relief.

The district court erroneously concluded that "Plaintiff still has not demonstrated a substantial likelihood of prevailing on the merits, because it would not be clear to a reasonable official that such conduct would violate Plaintiff's First Amendment right." ROA.743. It reached this conclusion by applying the "clearly established right" standard under the test for qualified immunity. ROA.743-744. But as a matter of law, qualified immunity applies only to claims for monetary damages against government officials. *Chrissy F. v. Miss. Dep't of Pub. Welfare*, 925 F.2d 844, 849 (5th Cir. 1991) ("Neither absolute nor qualified personal immunity extends to suits for injunctive or declaratory relief under § 1983."). It does not foreclose injunctive relief against government officials. *Id.* It was clear legal error for the district court to apply the

qualified immunity standard of "clearly established right" to Robinson's motion for a preliminary injunction.

**************

The district court's findings and conclusions, if upheld, would effectively privatize the First Amendment on social media. It would grant state actors the power to interpret and enforce private speech policies that do not comport with First Amendment protections. This runs contrary to the core tenet of our constitutional order that state action is bound by the Constitution, not the rules of private entities. And Robinson should be allowed to seek injunctive relief from her ongoing ban under the appropriate constitutional framework.

Accordingly, the Court should vacate the district court's denial of Robinson's motion for a preliminary injunction and remand it for further proceedings consistent with a correct application of the law and underlying facts.

## PRAYER FOR RELIEF

For the reasons provided, Robinson respectfully asks this Court to:

1. Reverse the district court's grant of Defendants' motion to dismiss as to Robinson's requests for injunctive and declaratory relief,

vacate the district court's final judgment, and remand this matter for further proceedings.

2. Vacate the district court's order denying Robinson's motion for a preliminary injunction because it was an abuse of discretion based on clear legal error; reverse the district court's finding that Facebook imposed any obligations on Defendants to enforce Facebook's private speech standards; and remand Robinson's motion for proceedings consistent with the Court's opinion.

Dated: May 21, 2018                Respectfully Submitted,

                                   /s/ JT Morris
                                   JT Morris
                                   JT Morris Law, PLLC
                                   610 Brazos Street, Suite 320
                                   Austin, TX 78701
                                   Telephone: (512) 717-5275
                                   Fax: (512) 582-2948
                                   E-mail: jt@jtmorrislaw.com

                                   Attorney for Plaintiff-Appellant
                                   Deanna J. Robinson

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of May, 2018, a copy of the

foregoing has been served upon counsel for all parties to this proceeding

as identified below through the court's electronic filing system as follows:

THOMAS P. BRANDT
State Bar No. 02883500
tbrandt@fhmbk.com
FRANCISCO J. VALENZUELA
State Bar No. 24056464
fvalenzuela@fhmbk.com
LAURA O'LEARY
State Bar No. 24072262
loleary@fhmbk.com
FANNING HARPER, MARTINSON,
BRANDT & KUTCHIN, P.C.
Two Energy Square
4849 Greenville Ave. Suite 1300
Dallas, Texas 75206
Telephone: (214) 369-1300
Fax: (214) 987-9649
Attorneys for Defendants-Appellees


/s/ JT Morris
JT MORRIS

# CERTIFICATE OF COMPLIANCE

## With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,187 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Local Rule 32.2.

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Local Rule 32.1 and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 in 14-point Century font for text, and 12-point Century font for footnotes.

/s/ JT Morris
JT MORRIS
Attorney for Plaintiff-Appellant
Deanna J. Robinson
Dated: May 21, 2018